THE GLENS FALLS INSURANCE COMPANY, PLAINTIFF IN ERROR, VS. SARAH McF. PORTER, DEFENDANT IN ERROR.

INSURANCE LAW—MORTGAGEE'S RIGHTS UNDER MORT-
GAGE CLAUSE IN POLICY—ENTRY OF DEFAULT NOT-
WITHSTANDING IMMATERIAL PLEAS—WHEN CLERKS,
CAN ENTER FINAL JUDGMENT.

1. Where a policy of fire insurance contains what is popularly
known as the standard or union mortgage clause by which
the insurer agrees to pay the amount of the policy· to a
mortgagee of the insured as such mortgagee's interest
may appear, and that as to the interest of the mortgagee
only the' insurance effected by the policy in his favor
should not be invalidated by any act or neglect of the
mortgagor or owner of the property insured, such mort-
gage clause does not create in favor of the mortgagee a.
contract wholly independent, separate and distinct from
that created by such policy in favor of the mortgagor or
owner, but such mortgage clause does give to the mort-
gagee such a separate and independent contractural
status towards the insurer as that he can recover the
amount provided for by the policy under circumstances
and conditions that would defeat a recovery by the mort-.
gagor or owner. The "acts or neglects of the mortgagor
or owner," from the forfeiting consequences of which the
mortgagee's rights and interests are exempted, contem-
plates any act of commission or omission on the part of'
the mortgagor or owner that might forfeit the policy so·
far as such mortgagor or owner is concerned, that occurs
subsequently to the execution of such mortgage clause..
Unless the mortgage clause expressly makes it obliga-
tory on the mortgagee to furnish proofs of loss he is not
required to furnish such proofs as a condition precedent
to his right of action on the policy. The failure of the
mortgagor or owner to furnish proofs of loss, either wholly
or within the time stipulated in the policy, constitutes

one of the neglects from the invalidating consequences of which the mortgagee is exempted by the mortgage clause.

2. Where a defendant files pleas that set up matters that are wholly irrelevant and immaterial to the plaintiff's case as made in the declaration, and that tender no material issue that is legally available as a defense to the case made by the declaration, and that traverses nothing essential to the plaintiff's right to recover as alleged in the declaration, the court may properly ignore such pleas and award a judgment by default, notwithstanding the presence of such pleas upon the files.

3. The statute, section 1035 Revised Statutes, that gives authority to clerks to enter final judgments, contemplates that the clerk can enter a final judgment after default only in those cases where the cause of action is purely and simply a money demand founded upon a contract for the payment of money only.   In cases where extrinsic evidence dehors the contract sued upon is necessary to ascertain the amount to be recovered the clerk has no authority to entertain such evidence or to found a final judgment thereon.  Held, that in a suit on a policy of fire insurance by a mortgagee of the insured or owner under a mortgage clause in such a policy, where extrinsic proof is necessary to ascertain the amount of loss, the clerk of the Circuit Court has no authority after a default to take testimony as to the amount to be recovered or to enter a final judgment thereon, but the assessment of damage in such case must be made by a jury.

Writ of error to the Circuit Court for Brevard County.

STATEMENT.

Defendant in error instituted a suit at law  against plaintiff in error. and alleged in the declaration that the defendant below on the twenty-seventh day of May, 1895,

at Titusville, in Brevard county, Florida, made its policy of insurance and delivered it to George B. Rumph and thereby, in consideration of $22.50 premium to it paid by Rumph, insured the said George B. Rumph against loss or damage by fire to the amount of $500 on his two-story metal roof, frame building, including awnings, while occupied by the assured as dry goods, clothing, furniture and millinery store, situate on the northwest corner of Main street and Washington avenue in Titusville, Florida, and no dollars on his stock of merchandise, consisting chiefly of dry goods, clothing, furniture, &c., and such other merchandise kept for sale by the assured usual to his trade, while contained in said described building, and no dollars on store and office furniture and fixtures, including iron safe, while contained in said described building and by said policy permitted $2,000 other insurance to be concurrent therewith; that by said policy, for the consideration aforesaid, said defendant promised and agreed to make good and satisfy the said George B. Rumph all such direct loss or damage not exceeding the sum of $500 as should happen by fire to said property whereon said insurance was made from the twenty-seventh day of May, 1895, at noon, to the twenty-seventh day of May, 1896, at noon, such loss or damage to be estimated according to the actual cash value of said property at the time such loss or damage should happen, but said defendant not being liable for an amount greater than three-fourths of the actual cash value of each item of property insured (not exceeding the amount insured on each such item) at the time immediately preceding such loss or damage; and in the event of additional insurance permitted by said policy, then its proportion only of the three-fourths of such cash value of each item insured at

the time of the fire, not exceeding the amount insured on
each item; and the amount thereof to be payable   sixty
days after notice and proof of such loss or damage should
be made by the insured in conformity to  the   conditions
annexed to the said policy, and by its agreement filed with
the Treasurer of the State of Florida, as  a   condition
precedent to its doing business in said State, agreed that
said loss should be payable and might be recovered by ac-
tion in any county in which said defendant might have an
agent doing its business of insurance; that the said con-
ditions in the said policy mentioned are as follows: That
the assured would take a complete itemized inventory of
stock on hand at least once in each calendar year, and in
case such inventory had not been taken within   twelve
months before the date of the policy, that one should be
taken in detail within thirty days thereafter; that   the
assured would keep a set of books which should clearly
and plainly present a complete record of business trans-
acted, including all purchases, sales and shipments,  both
of cash and credit, from date of inventory as   provided
for in the foregoing conditions, during the continuance
of this policy; that the assured would keep such books
and inventory, and also the last preceding inventory,  if
such had been taken, securely locked in a fire-proof safe
at night, and at all times when the building mentioned in
said policy was not actually open for business; or fail-
ing in this that the assured would keep such books and
inventory in some place not exposed to a fire which would
destroy the aforesaid building; that the  assured if  re-
quired should produce such books and inventory for the
inspection of the defendant; that the interest of the  as-
sured was and remained the unconditional and sole own-
ership of the property insured; that the ground on which

the insured building stood was owned by the assured in.
fee simple; that the personal property was and  should
continue unencumbered by chattel mortgages; that  the
assured would refrain from increasing the hazard by any
means within his knowledge or control, that he would re-
frain from keeping on said premises or using or allow-
ing thereon benzine, benzole, dynamite, other fireworks,
gasoline, greek fire, gunpowder, except  in  twenty-five-
pounds in quantity, naptha, nitro-glycerine or other ex-
plosives, phosphorus or petroleum or any of its products.
of greater inflammability than kerosene oil of the United
States standard; that the building should be  occupied
continuously without vacancy as long as ten days; that
the assured would give immediate notice of any loss by
fire to the defendant in writing and protect the property
from further damage in case of partial loss, and in such
case separate and inventory the damaged and undamaged
personal property, and in sixty days after such fire, un-
less the time was extended in writing by the  defendant,
should render a statement to defendant signed and sworn
to by the assured, stating his knowledge and belief as to
the time and origin of the fire, the interest of the insured
and of all others in the property, the cash value of each
item thereof, and the amount of loss thereon, all other
insurance whether valid or not, covering  any of  said
property, and a copy of all the descriptions and schedules.
in all policies and changes in the title, use,  occupation,
location or exposures of said property since the issuing
of said policy, by whom and for what purpose any build-
ing therein described and the several parts thereof were
occupied at the time of the fire, and that the assured
would furnish if required a certificate of a magistrate or
notary public (not interested in the claim as a creditor

or otherwise, nor related to the insured), living nearest the place of fire, stating that he had examined the circumstances and believed the insured had honestly sustained loss to the amount such magistrate or notary public should certify; that the insured as often as required should exhibit to any person designated by the defendant all that remained of any property in said policy described and submit to examination under oath, or any person named by the defendant, and subscribe the same, as often as requested produce for examination all books of accounts, bills, invoices and other vouchers, or certified copies thereof if originals were lost, at such reasonable place as might be designated by defendant or its representative, and permit extracts and copies thereof to be made; that in the event of disagreement as to amount of loss the same should be ascertained by appraisers if required; that if suit should be brought against defendant on said policy, it should be commenced within twelve months next after the fire; and that the word insured used in said policy should be held to include the legal representative of the insured; that afterwards, on the first day of October, 1895, the interest of said George B. Rumph as owner of the property covered by said policy was for a valuable consideration assigned in writing endorsed on said policy to Simon Hamberg, subject to the consent of defendant, and that defendant on the third day of said month consented in writing endorsed on said policy that the interest of said Rumph as the owner of the property covered by the policy should be assigned to the said Hamberg, who from that date became the insured in said policy in place and stead of said Rumph, subject to perform all of the conditions and receive all of the benefits thereof; that in consideration of the premises and

that said Hamberg had accepted the assignment of said policy, and thereby had promised defendant to keep and perform all things in said policy contained on said Hamberg to keep and perform, the defendant promised said Hamberg that it would keep and perform all things in said policy mentioned on its part to be kept and performed, and defendant then and there became and was an insurer of the said Hamberg to the face value of said policy upon the said property; that from the time of making said policy and until the assignment thereof to the said Hamberg the said Rumph had an interest in said property more than one-third greater than the total amount of said sum so by the defendant insured thereon, and the additional concurrent insurance underwritten thereon, and that his interest was the unconditional and sole ownership of the personal property and the fee simple title and sole ownership of the land and building in said policy described, and that from the assignment of said policy to said Hamberg until the happening of the loss and damage hereinafter mentioned he had an interest in said property more than one-third greater than the total amount of the said sum so by defendant insured thereon, and the additional concurrent insurance underwritten thereon, and that his interest was the unconditional and sole ownership of the land and building in the said policy described; that at the time of the writing and delivery of the said policy of insurance, on the twenty-seventh day of May, 1895, plaintiff was a mortgagee of the property so insured to the amount of $2,500, and no part of said mortgage debt has ever been paid; that as a part of said policy of insurance and for the consideration hereinbefore mentioned defendant agreed to pay the plaintiff the loss un-

der said policy as her interest might appear, and further
agreed for the consideration aforesaid that said insur-
ance as to her interest should not be invalidated by any
act or neglect of the mortgagor or owner of said  prop-
erty, nor by any foreclosure or other proceedings or no-
tice of sale relating to said property, nor by any change
in the title or ownership of the property, nor by the occu-
pation of the premises for purposes more hazardous than
are permitted by said policy, provided that in case  the
mortgagor or owner should neglect to pay any premium
due under said policy the mortgagee should on  demand
pay the same; and provided  also that  the  mortgagee
should notify the defendant of any change of ownership
or occupancy or increase of hazard which should come to
the knowledge of said mortgagee, and should on demand
pay the premium for such increased hazard for the term
of the use thereof; and provided further that in case
of any further insurance upon said property  defendant
should not be liable under said policy for a greater pro-
portion of any loss or damage sustained than the sum by
said policy insured might bear to the whole amount of in-
surance of said property, whether held by  the  owner,
mortgagee or otherwise; and provided further that upon
the payment of the mortgagee of any loss under  said
policy by the defendant it should be legally subrogated to
all the rights of the plaintiff under her security held as
collateral to the mortgage debt, or defendant might at its
option pay to the mortgagee the amount due under said
mortgage and receive an assignment and transfer thereof,
but on condition that no subrogation should impair the
right of the mortgagee to recover the full amount of her
claim.

It is further alleged that on the twelfth day of Decem-

ber, 1895, while said policy was in force the property insured was entirely destroyed by fire, whereby Simon Hamberg sustained loss and damage to an amount more than one-third greater than the total insurance under-written by defendant and other companies upon said property, and said loss and damage did not happen by means of any invasion, insurrection, riot or civil commotion, or of any military or usurped power; that by the terms of said policy it was optional with defendant to re-place and rebuild the property lost or damaged with other of like kind and quality within a reasonable time on giving notice within thirty days after receipt of the proof of loss required in the policy of its intention to do so.

It is further alleged that on the thirteenth day of December, 1895, the day after the fire, Simon Hamberg was arrested and confined in jail until the eighth day of March, 1896, and his books of account containing the inventories of his insured stock, and other information necessary to making proof of loss required by the policy were seized by the sheriff, and all access thereto was denied to Hamberg or any one else except the prosecuting officers until the said eighth day of March, when said Hamberg was liberated.

It is then alleged that within seven days after Hamberg was liberated from jail and his books were restored to him he made proof of loss and damage under oath and delivered it to defendant by mail which it received on or about the fifteenth day of March, 1896, and no objection was made as to the form or sufficiency of the statement of said proof of loss, and that defendant did not within thirty days after receipt of said proof of loss or any

other time give notice to Hamberg or plaintiff of its intention to elect to rebuild and replace said lost property.

It is also further alleged that plaintiff has in all things observed, performed and fulfilled all and singular the matters and things which were on her part to be observed, performed and fulfilled according to the conditions, form and effect of said policy, except such as were impossible to be performed, or were waived by the mortgage clause of said policy, or which the defendant became by its conduct estopped to require performance of; that her interest in said mortgaged property exceeds the sum of $2,000 by virtue of her mortgage upon the same and the building insured by said policy constituted over $2,000 of her security and that her interest in the loss sustained under the policy amounts to over $2,000; that the loss was total and Hamberg sustained damage one-third greater than the total amount of insurance written upon said building, and although plaintiff has sustained loss and damage by reason of the destruction of said property by fire in the manner and to the amount aforesaid, and although sixty days after the receipt by defendant of the proof of loss expired on May 15th, 1896, on which day the loss became due and payable to the full amount of the policy, yet defendant has not paid to the plaintiff the said amount, nor the interest thereon which accrued after May 15th, 1896, nor any part of said obligation, but has refused to do so to the damage of plaintiff $1,000, and, therefore, she brings this suit.

Defendant demurred to the declaration on the following grounds: 1. It appears from the declaration that a condition of the policy sued on requires the assured to give immediate notice of loss by fire in writing to defend-

37 S. C.

ant, yet it is not averred that such notice was given by him or any one on his behalf.   2. The contract declared on provides that the amount of the loss should be payable sixty days after notice and proof of loss should be made by the insured in conformity to the conditions annexed to the said policy, one of  which conditions . as shown by the declaration being that said insured should in sixty days after such fire, unless the time was extended in writing by the defendant; render a statement to  defendant, signed and sworn to by the assured stating the knowledge and belief of the assured as to the time and origin of the fire and other matters therein specified, and yet it is not averred that said statement within  said time was so rendered, nor that the time for such rendering had been extended by defendant in writing or otherwise.   3.   The declaration avers as an excuse for noncompliance with the condition set up in  ground No.  2, and so made by the contract a pre-requisite to the  payment of the amount of the loss therein provided against, that the said assured Hamberg was arrested and confined in jail on the thirteenth of December, 1895, the day after the fire, and there confined until the eighth of March following, when he was liberated, yet it is not averred that the arrest and confinement were without due process of law, nor that defendant caused said arrest and confinement, or was in anywise concerned therein, or that the contractual relation between defendant, plaintiff and Hamberg, or either of them, in respect to the time within which the conditions made a pre-requisite should be complied with was by reason of said arrest and confinement in anywise modified or extended.  4. It is not averred generally that plaintiff has observed and performed all and singular the conditions by her to be observed and

performed; but, on the contrary, she excepts from said averment such conditions as are impossible to be performed or hereby waived, or which defendant became by its conduct estopped to require performance of, by which qualified averment it is sought to submit to the jury, as matter of fact, what conditions were impossible to be performed, what as matter of fact constitutes a waiver, and what as matter of fact constitutes an estoppel. 5. The declaration avers that the amount of loss due on the policy became payable the fifteenth of May, 1896. which date is averred to be sixty days after the required proof of loss was received by defendant, and it is further averred that said sixty days expired May 15th, 1896, whereas under the terms of the policy said proofs were required to be submitted within sixty days after such fire, which is alleged to have occurred on the twelfth of December, 1895. 6. The declaration does not aver sufficient facts to constitute a cause of action. The demurrer was overruled and defendant filed the following pleas: 1st. It is not true as set up in the declaration that the interest of Geo. B. Rumph as owner of the property covered by said policy was assigned in writing endorsed on said policy to the said Hamberg. 2nd. It is not true that by virtue of said alleged assignment the defendant then and there became and was an insurer of said Hamberg to the face value of said policy upon the said property as set up in said declaration. 3rd. The said Hamberg, the alleged beneficiary of said policy, was not at the time of the alleged fire indebted to the said plaintiff in respect of said alleged mortgage debt or any part thereof. 4th. It is not true that at the time of the fire alleged to have occurred: December 12th, 1895, the said Hamberg then and there sustained loss to the amount and as therein set up.

5th. Defendant avers that the arrest and confinement of said Hamberg set up in the declaration as an excuse for the failure to furnish the proofs of loss required by the policy was based on the charge of arson preferred against said Hamberg growing out of the fire by which said building so insured against was destroyed, and defendant avers it had nothing to do with said arrest and confinement. 6th. It is not true that the said Hamberg used all reasonable means to save and preserve the property at and after the said alleged fire, as he was required to do by the conditions of the policy sued on, but wholly neglected to do so, whereby said alleged loss was occasioned. 7th. It is not true as alleged in said declaration that the plaintiff has in all things observed, performed and fulfilled all things which were on her part to be observed, performed and fulfilled, other than such as were impossible to be performed, or were waived; on the contrary, defendant says (a) plaintiff did not within sixty days after the fire render a statement to the defendant as required by the terms of said policy, nor was the time therefor extended in writing by defendant, nor was it impossible for plaintiff, if the said Hamberg was disabled from doing so, or unwilling to do so, to have rendered such statement within said sixty days as required by said policy. (b) It is not true that access to said books was denied to the plaintiff for the said interval of sixty days (c) It is not true that the proofs of loss required by said policy were furnished the defendant as set up in said declaration.

Plaintiff moved for a judgment by default on the ground that the pleas did not take issue upon any allegation of the declaration upon which the liability of de-

fendant was predicated, but left the allegations essential to a recovery confessed, and the court granted this motion.

Subsequently final judgment was entered upon the default before the Circuit Clerk upon the production of certain proof evidenced by certain documents and affidavit by the plaintiff. To this judgment the writ of error was directed.

The other facts in the case are stated in the opinion of the court.

*A. W. Cockrell & Son*, for Plaintiffs in Error.

*Robbins & Graham*, for Defendant in Error.

PER CURIAM (*after stating the facts.*)

This cause being reached for final adjudication, was re-who report the same recommending reversal. After due consideration the court has prepared the following opinion:

The errors assigned are as follows: 1. The court erred in overruling the demurrer of defendant to the declaration.

2. The court erred in granting the motion of plaintiff for entry of default filed at chambers July 16th, 1897.

3. The clerk of said court was not authorized by law to enter the final judgment he entered in said cause.

4. The clerk was without authority to entertain or consider the evidence produced.

The plaintiff in this case was a mortgagee of the insured premises, to whom the policy of insurance sued upon was made payable by a regular mortgage clause contained therein, and as such mortgagee, by virtue of such mortgage clause, she brought the suit.

The propriety of the rulings assigned as the first and second errors, *viz*: (1) The overruling of the defendant's demurrer to the declaration, and (2) the granting of the plaintiff's motion for entry of default notwithstanding the presence on file of seven pleas interposed by the defendant, hang upon the proper interpretation of the mortgage clause contained in the policy sued upon, and the rights of the mortgagee plaintiff thereunder. In the leading case upon the subject, Hastings *et at* v. Westchester Fire Insurance Co., 73 N. Y. 141, it is held that "by the terms of the mortgage clause attached to the policy the defendant agreed that the insurance, as to the interest of the mortgagee only, should not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than were permitted by the policy. But it was further agreed, in substance, that if the defendant should pay the mortgagee any loss, for which it would not be liable to the mortgagor, it should be subrogated to the rights of the mortgagee under all securities for the mortgage debt, or it might pay the amount due on the mortgage and take an assignment thereof. * * * The intent of this clause was, that in case by reason of any act of the mortgagors or owners, the company should have a defense against any claim on their part for a loss, the policy should nevertheless protect the interest of the mortgagees, and operate as an independent insurance of that interest, and indemnify them against loss re-

sulting from fire, without regard to the rights of the mortgagors under the policy; and, to effectuate that intention, we should hold that, as against the mortgagees, the defendant can not set up any defense based upon any act or neglect of the mortgagors, whether committed before or after the issuing of the policy, or the making of the agreement between the company and the mortgagees. * * * The intent of the clause was to make the policy operate as an insurance of the mortgagors and the mortgagees separately, and to give the mortgagees the same benefit as if they had taken out a separate policy, free from the conditions imposed upon the owners, making the mortgagees responsible only for their own acts. It established a privity between the company and the mortgagees, and provided that, notwithstanding that the insurance might be invalidated as to the mortgagors, it should, nevertheless, protect the mortgagees; and, as a consideration for this undertaking it was stipulated that in case the company should be called upon to pay the mortgagees, under circumstances which discharged it from liability to the mortgagors, it should be indemnified by subrogation, or an assignment of the mortgage and all securities held by the mortgagees for the mortgage debt. This provision, in case the policy were invalidated as to the mortgagors, made it, in substance, an insurance solely of the interest of the mortgagees, by direct contract with them, unaffected by any questions which might exist between the company and the mortgagors." Eddy v. London Assur. Corp., 143 N. Y. 311, 38 N. E. Rep. 307; Meriden Savings Bank v. Home Mutual Fire Ins. Co., 50 Conn. 396; Syndicate Ins. Co. v. Bohn, 65 Fed. Rep. 165, S. C. 12 C. C. A. 531; Hartford Fire Ins. Co. v. Olcott, 97 Ill. 439; Palmer Sav. Bank v. Insurance Company of North Amer-

ica, 166 Mass. 189, 44 N. E. Rep. 211; Westchester Fire Ins. Co. v. Coverdale, 48 Kan. 446, 29 Pac. Rep. 682; Oakland Home Ins. Co. v. Bank of Commerce, 47 Neb. 717, 66 N. W. Rep. 292; Dwelling House Ins. Co. v. Kansas Loan & Trust Co. 5 Kan. App. 137, 48 Pac. Rep. 891. In the case last cited it is held that under the mortgage clause the mortgagee was not bound to make proof of loss; that the policy imposed that duty upon the owner, and the mortgage clause freed the mortgagee from the consequences of the owner's neglect. To the same effect is the case of Queen Ins. Co. v. Dearborn Savings, Loan & Building Ass'n., 175 Ill. 115, 51 N. E. Rep. 717, S. C. 75 Ill. App. 371. From the authorities cited and others that we have read we have come to the conclusion that while the standard or union mortgage clause in a policy of insurance does not create in favor of the mortgagee a contract wholly independent, separate and distinct from that created by such policy in favor of the mortgagor or owner, yet that such mortgage clause does give to the mortgagee such a separate and independent contractual status towards the insurer as that he can recover the amount provided by the policy under circumstances and conditions that would defeat a recovery by the mortgagor or owner. By the express terms of such mortgage clause the insurer agrees that as to the interest of the mortgagee the insurance effected by the policy in his favor should not be invalidated by any act or neglect of the mortgagor or owner of the property insured. We think the *"acts or neglects of the mortgagor or owner,"* from the forfeiting consequences of which the mortgagee's rights and interests are exempted contemplates any act of commission or omission on the part of the mortgagor or owner that might forfeit the policy so far as such mortgagor or owner is

concerned, that occur subsequently to the execution of such mortgage clause. The insurer is indemnified for its practically unconditioned guaranty to the mortgagee by the further provision in the mortgage clause giving it the right to subrogation to the rights of the mortgagee in his mortgage security in the event the insurer has to pay the policy to the mortgagee under circumstances where the mortgagor or owner had by some act or neglect forfeited his right to such insurance. And we agree with those authorities that hold that unless the mortgage clause expressly makes it obligatory on the mortgagee to furnish proofs of loss, that he is not required to furnish such proofs as a condition precedent to his right of action on the policy; and that the failure of the mortgagor or owner to furnish such proofs of loss, either wholly or within the time stipulated in the policy, constitutes one of the *neglects* from the invalidating consequences of which the mortgagee is exempted. The mortgagee is ordinarily in no better position to furnish proofs of loss than the insurer; and that would be sufficient proof of loss to establish the insurer's liability so far as such mortgagee was concerned, might affirmatively show the non-liability of the insurer to the mortgagor or owner. The declaration in this case besides alleging amply enough to make out the mortgagee's right of action against the insurer defendant, also alleges a mass of matter not material or relevant to her case as an assured mortgagee under the mortgage clause, but this surplusage in allegation did not render the declaration subject to demurrer.

The contentions of the defendant's demurrer to the declaration, to the effect that it is bad because it fails to aver the immediate giving of notice of loss by fire by the assured, and because it fails to allege the giving of notice

and proofs of loss by the assured within sixty days after the fire as provided by the policy, and because it fails to allege that the imprisonment of the assured, set up in the declaration as an excuse for his failure to make proofs of loss within sixty days after the fire was without due process of law or that the defendant caused said imprisonment, all relate to matters that are irrelevant and immaterial to the mortgagee plaintiff's right to recover under the mortgage clause in the policy sued upon, and relate to omissions on the part of the mortgagor or owner from the invalidating consequences of which such mortgagee is by said mortgage clause exempted; and the failure of the mortgagee's declaration to either mention them at all or to confess and avoid them furnishes no ground of demurrer to such declaration. The fourth ground of the demurrer, to the effect that the declaration is bad "because it does not aver generally that the plaintiff had observed and performed all and singular the conditions by her to be observed and performed; but, on the contrary, excepts from said averment such conditions as are possible to be performed or hereby waived, or which defendant became by its conduct estopped to require performance of. by which qualified averment it is sought to submit to the jury, as a said averment such conditions as are impossible to be performed; what as matter of fact constitutes a waiver, and what as matter of fact constitutes an estoppel," is under the circumstances of this case untenable. Under the mortgage clause of the policy sued upon the only conditions expressly stipulated to be performed by the mortgagee are that the mortgagee should on demand pay any premium due on said policy in the event of the neglect of the mortgagor or owner to pay the same, and further that the mortgagee should notify the insurer of any change of

ownership or occupancy or increase of hazard which should come to the knowledge of the mortgagee, and should on demand pay the premium for such increased hazard for the term of the use thereof. The declaration shows affirmatively that the only premium due upon the policy sued upon was paid by the assured, and that the property was destroyed before the expiration of the term of insurance for which such payment was made, so that it is expressly shown that the condition in the mortgage clause calling for the payment by the mortgagee of any premium due and neglected by the mortgagor or owner had not arisen and did not exist. The declaration, except a transfer, the sanction of which by the insurer was endorsed on the policy, nowhere shows that there was any change of ownership or occupancy or increase of hazard that came to the knowledge of the mortgagee, of which she was bound to notify the insurer under the mortgage clause, and if there existed any such knowledge on the part of the mortgagee there is nothing in the terms of the policy that makes its disclosure by allegation in the declaration at all necessary to the plaintiff mortgagee's right to recover, or that makes it necessary to negative in the declaration the existence of knowledge by such mortgagee of any such change of ownership or occupancy or increase of hazard, but if such change of ownership or occupancy or increase of hazard in fact existed and was known to the mortgagee and she failed to notify the insurer thereof, or failed to pay any increase of hazard premium on demand as provided for in the mortgage clause, it was matter proper to be affirmatively urged by the defendant as matter of defense for such advantage, if any, as it might afford as a defense, but was not necessary to be alleged or negatived in the declaration. The allegation made in

the declaration, therefore, of compliance by the plaintiff mortgagee with all conditions upon her part to be performed, under the circumstances shown by this declaration, was immaterial, surplusage and does not render the declaration subject to demurrer. There was, therefore, no error in overruling the demurrer to the declaration.

The matters set up in all the pleas filed by the defendant were wholly irrelevant and immaterial to the plaintiff's case as mortgagee under her mortgage clause, and tendered no material issue that was legally available as a defense against the mortgagee under her mortgage clause, and denied nothing essential to the plaintiff mortgagee's right to recover, as alleged in her declaration. The court, therefore, committed no error in ignoring such pleas, and in granting the plaintiff's motion for judgment by default notwithstanding the presence of such pleas upon the files.

The third and fourth errors assigned, to the effect that the clerk of the Circuit Court was without authority to enter the final judgment entered by him in said cause, and had no authority to entertain the evidence produced upon which it was predicated, are well taken. It is settled here that the authority of the clerk of the Circuit Court to enter final judgments consequent upon defaults is derived entirely from the statute, and the statute must be strictly pursued. Blount v. Gallaher, 22 Fla. 92; Snell v. Irvine, 17 Fla. 234; Coons v. Harllee, 17 Fla. 484; Ropes v. Snyder Harris Bassett Co. 37 Fla. 529, 20 South. Rep. 535. The statute, section 1035, Revised Statutes, that gives authority to clerks to enter final judgments, contemplates that the clerk can enter a final judgment after default only in those cases where the cause of action is purely and simply a money demand founded upon a contract for the payment of money only. In cases where extrinsic

evidence *dehors* the contract sued upon is necessary to ascertain the *amount* to be recovered the clerk has no authority to entertain such evidence or to , found a ' final judgment thereon.

The final judgment entered by the clerk is reversed and set aside with directions for submission of the cause to a jury for the assessment of the plaintiff's damages, the defendant in error to be taxed with the costs of the writ of error proceedings.