452 So.2d 42 (1984)
PROGRESSIVE AMERICAN INSURANCE COMPANY, a Florida Corporation, Appellant,
v.
FLORIDA BANK AT DAYTONA BEACH, a Florida Corporation, Appellee.
No. 83-913.
District Court of Appeal of Florida, Fifth District.
May 10, 1984.
Rehearing Denied June 18, 1984.
*43 George L. Winslow, Jr., of Wright, Fulford & Winslow, Orlando, for appellant.
Theodore F. Zentner of Becks, Becks & Wickersham, Daytona Beach, for appellee.
WOLFMAN, S., Associate Judge.
This is an appeal from a final judgment in favor of Florida Bank at Daytona Beach ("Bank") against Progressive American Insurance Company ("Progressive"), establishing Progressive's liability to the Bank on a loss claim.
On May 11, 1981, one Arthur Eldridge purchased a 1981 Chevrolet Corvette automobile from Higginbotham Chevrolet. The Bank lent Eldridge the funds to purchase the automobile, thereby becoming a lienholder, and issued its draft to Higginbotham Chevrolet. Eldridge procured insurance from Progressive. The policy included a loss payable clause,[1] which provides in relevant part:
Loss or damage, if any, under the policy shall be payable as interest may appear to ... Bank and this insurance as to the interest of the ... Lienholder... shall not be invalidated by any act or neglect of the ... Owner ..., provided, however, that the conversion, embezzlement or secretion by the ... Debtor in possession of the property insured ... is not covered *44 under such policy, unless specifically insured against and premium paid therefore; and provided, also, that in case the ... Owner ... shall neglect to pay any premium due under such policy, the Lienholder shall on demand pay the same. Provided also, that the Lienholder shall notify the company of any change of ownership or increase of hazard which shall come to the knowledge of said Lienholder and, unless permitted by such policy, it shall be noted thereon and the Lienholder shall on demand, pay the premium for such increased hazard ...; otherwise such policy shall be null and void ..."
On June 21, 1981, Eldridge reported the Corvette stolen. In September Progressive issued a draft to the Bank and Eldridge in payment of the theft claim; however, based upon information that Eldridge was involved in the theft, Progressive stopped payment on the draft. Thereafter, the Bank filed a complaint against Progressive for a Declaratory Judgment seeking its entitlement to recover under the loss payable clause of the policy. By affirmative defense, Progressive alleged Eldridge "did by unlawful means convert, embezzle or secrete" the vehicle, thereby voiding any loss coverage under the policy.
In summary, the trial court found (1) Eldridge had converted, embezzled or secreted the vehicle; (2) the Bank was not to any extent involved in the conversion, embezzlement or secretion of the automobile; and (3) the Bank as co-loss payee was entitled to recover against Progressive under the terms of the loss payable clause regardless of the conversion, embezzlement or secretion of the insured vehicle by the owner. Progressive appeals on the basis that the loss payable clause was invalidated by Eldridge's conversion, embezzlement or secretion of the vehicle.
A loss payable clause is one method by which a lienholder or mortgagee protects its property interest. Generally, two types of loss payable clauses exist and are often referred to as (1) an open loss payable clause, and (2) a union, standard or New York clause. Under the open loss payable clause, the lienholder/mortgagee stands in the owner/mortgagor's place, and is usually subject to the same defenses as may be used against the owner/mortgagor. The open loss payable clause does not create a new contract between the lienholder/mortgagee and the insurer, nor does it abrogate any condition of the policy. The union, standard or New York clause provides that the owner/mortgagor's acts or neglect will not invalidate the insurance provided that if the owner/mortgagor fails to pay premiums due, the lienholder/mortgagee shall on demand pay the premiums. In return for incurring premium liability, the lienholder/mortgagee is freed from the policy defenses which the insured might have against the owner/mortgagor. The union, standard or New York loss payable clause is then an agreement between the lienholder/mortgagee and the insurer independent of the policy contract between the owner/mortgagor and the insurer. J.A. Appleman, Insurance Law and Practice, Vol. 5A, § 3401 (1970); Glens Falls Insurance Co. v. Porter, 44 Fla. 568, 33 So. 473 (1902); Bank of Commerce v. Occidental Fire & Casualty Co., 264 So.2d 101 (Fla. 4th DCA 1972); Southern Ins. Co. v. First National Bank at Orlando, 237 So.2d 302 (Fla. 4th DCA 1970).
The loss payable clause in the instant case is neither an open nor a standard loss payable clause; rather, it is a hybrid clause. Although the clause provides that the insurance shall not be invalidated by any act or neglect of the owner/mortgagor and the lienholder/mortgagee is to pay the premiums upon the owner/mortgagor's default, it also establishes several instances where coverage would not exist, to-wit: (1) conversion, embezzlement or secretion by the owner/mortgagor unless specifically insured against and a premium paid; (2) nonpayment of insurance by owner or lienholder; and (3) the lienholder, after notifying the insurer of a change of ownership or an increase in hazard, fails to pay the increased premium after insurer's demand.
*45 In National Casualty Co. v. General Motors Acceptance Corp., 161 So.2d 848 (Fla. 1st DCA 1964), a loss payable clause identical to the one in the instant case was involved. The lienholder brought an action against the insurance company for damages to an insured's automobile resulting from the owner's intentional act of driving the vehicle off a bridge into the water. The parties had stipulated that the owner's intention was to cover up his disappearance by creating the impression that he had been in an accident. The insurance company argued that it was not liable because the owner's conduct constituted "conversion." The court found that the owner's acts had no bearing on the lienholder's interest and further the owner's actions were not criminal in the sense contemplated by the clause. The court stated:
The words "embezzlement or secretion" as used in said provision, suggest crimes falling within the general category of theft or larceny, the difference being that the original possession was obtained by lawful means. We are satisfied that the defendant insurer, in using the word "conversion" in connection with the words "embezzlement and secretion" had reference to conversion in the criminal sense rather than as a tort.
Id. at 852. Basically, there was nothing to indicate that the owner intended to convert the subject automobile.
In the instant case, the Bank did not take the position that Eldridge had not converted or embezzled within the meaning of the loss payable clause, or that the owner did not possess a criminal intent. To the contrary, the Bank contends that Eldridge converted, embezzled or secreted the vehicle and did so with a criminal intent and yet, it is still entitled to collect for the loss.
It is fundamental that where there are ambiguous, equivocal or uncertain terms in an insurance policy, those terms are to be interpreted liberally in the insured's favor; however, plain and unambiguous language requires no interpretation and should be given its popular and usual significance absent public policy reasons to the contrary. Rigel v. National Casualty Co., 76 So.2d 285 (Fla. 1954); Howard v. American Service Mutual Ins. Co., 151 So.2d 682 (Fla. 3d DCA 1963), cert. dismissed, 162 So.2d 666 (Fla. 1964). The loss payable clause in the instant case is not ambiguous and, while it contains exclusions, it should not be considered a provision tending to limit or avoid liability. The Bank had the clear opportunity to either require Eldridge to obtain a pure union or standard loss payable clause or to pay the additional premium for the added coverage.
Based on the foregoing, it is our conclusion that the Bank's recovery against Progressive was in error. It follows then that the award of attorney's fees to the Bank pursuant to section 627.428(1), Florida Statutes (1981), was improper.
The Final Judgment and award of attorney's fees is accordingly REVERSED.
SHARP and COWART, JJ., concur.
NOTES
[1] The clause in its entirety provides:

Loss or damage, if any, under the policy shall be payable as interest may appear to Florida National Bank 130 N. Ridgewood Avenue, Daytona Beach, FL 32015, and this insurance as to the interest of the Bailment Lessor, Conditional Vendor, Mortgagee or other, secured party or Assignee of Bailment Lessor, Conditional Vendor, Mortgagee or other secured party (herein called the Lienholder) shall not be invalidated by any act or neglect of the Lessee, Mortgagor, Owner of the within described automobile or other Debtor nor by any change in the title or ownership of the property; provided, however, that the conversion, embezzlement or secretion by the Lessee, Mortgagor, Purchaser or other Debtor in possession of the property insured under a bailment lease, conditional sale, mortgage or other security agreement is not covered under such policy, unless specifically insured against and premium paid therefor; and provided, also, that in case the Lessee, Mortgagor, Owner or other Debtor shall neglect to pay any premium due under such policy the Lienholder shall, on demand, pay the same.
Provided also, that the Lienholder shall notify the company of any change of ownership or increase of hazard which shall come to the knowledge of said Lienholder and, unless permitted by such policy, it shall be noted thereon and the Lienholder shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise such policy shall be null and void.
The company reserves the right to cancel such policy at any time as provided by its terms, but in such case the company shall notify the Lienholder when not less than ten days thereafter such cancellation shall be effective as to the interest of said Lienholder therein and the company shall have the right, on like notice, to cancel this agreement.
If the insured fails to render proof of loss within the time granted in the policy conditions, such Lienholder shall do so within sixty days thereafter, in form and manner as provided by the policy, and further, shall be subject to the provisions of the policy relating to appraisal and time of payment and of bringing suit.
Whenever the company shall pay the Lienholder any sum for loss or damage under such policy and shall claim that, as to the Lessee, Mortgagor, Owner or other Debtor, no liability therefor existed, the company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may at its option, pay to the Lienholder the whole principal due or to grow due on the mortgage or other security agreement with interest, shall thereupon receive a full assignment and transfer of the mortgage or other security agreement and of all such other securities; but no subrogation shall impair the right of the Lienholder to recover the full amount of its claim.
Whenever a payment of any nature becomes due under the policy, separate payment may be made to each party at interest provided the company protects the equity of all parties.