678 So.2d 852 (1996)
SECURED REALTY INVESTMENT FUND, LTD., III, Appellant,
v.
HIGHLANDS INSURANCE COMPANY, Appellee.
No. 95-1531.
District Court of Appeal of Florida, Third District.
August 7, 1996.
Rehearing Denied September 18, 1996.
*853 Parrillo, Weiss & O'Halloran and Beth M. Gordon, Miami, for appellant.
Parenti, Falk, Waas & Frazier and Gail Leverett Parenti, Coral Gables, for appellee.
Before NESBITT, GREEN and FLETCHER, JJ.
NESBITT, Judge.
Plaintiff-appellant Secured Realty Investment Fund, Ltd., III ("Secured Realty") appeals from an adverse final summary judgment entered in favor of the defendant-appellee Highlands Insurance Company ("Highlands"). We reverse and remand the judgment entered for the following reasons.
On October 17, 1991, the Garcias entered into a mortgage and security agreement with Century Investment Company for a principal amount of $240,000. The mortgage encumbered two properties; one located in Key Largo, and the other in Dade County. On November 20, 1991, Century assigned all of its interest in the note and mortgage to Secured Realty.
The Garcias had an insurance policy, issued by Highlands, that covered the Key Largo Property and had been in effect since December of 1990. Secured Realty obtained an endorsement to the policy in December of 1992 to reflect that it was the sole mortgagee of the insured property.
Secured Realty initiated foreclosure proceedings in early 1992 because the Garcias defaulted. The foreclosure sale took place in March of 1993.[1] Secured Realty bid $100 and took back title to both the Key Largo and Dade County properties in early April. The redemption amount was $361,953. On April 29, 1993 Secured Realty obtained a Writ of Possession for the Key Largo property that the sheriff executed on May 5, 1993. On arriving at the property, the sheriff discovered that it was extensively damaged. Both parties agree that the damage occurred on or about May 5, as the sheriff had been at the property on May 3 and no damage was present.
On May 11, Secured Realty wrote to a Highlands agent to request that the policy be endorsed to reflect that Secured Realty was now the owner of the property and the named insured. Highlands issued such an endorsement effective May 14, 1993.[2] Secured Realty sent a letter, also on the 14th, to Highlands' agent notifying them of the loss, describing the damage, and making a claim under the policy.
In early July of 1993 Secured Realty sold both the Dade County and Key Largo properties. The Dade property sold for $84,000. Secured Realty sold the Key Largo property "as-is" for $265,000. On July 23, 1993, Highlands offered $45,000 to settle Secured Realty's claim. Secured Realty rejected that offer and filed a complaint. Highlands answered and ultimately filed an amended motion for partial summary judgment.
In that motion Highlands essentially argued that Secured Realty did not have an insurable interest in the Key Largo property at the time the loss occurred. When Secured Realty took title to both properties as a result of foreclosure, their fair market value exceeded the redemption amount. Thus, Highlands reasoned, at that moment the debt *854 was satisfied and Secured Realty was no longer a mortgagee. Consequently, the insurer argued, Secured Realty did not have an insurable interest under the policy at the time the loss occurred, almost a month after Secured Realty became owner.
Alternatively, Highlands argued that if Secured Realty had an insurable interest at the time of the loss, its recovery should be limited to the difference between the redemption amount ($361,953) and the amount it realized from the post-loss sale of the properties ($349,000), about $12,953. The trial court entirely agreed with Highlands' position and entered summary judgment in its favor, including the alternative disposition in the event of reversal.
This appeal requires us to construe the mortgage loss payable clause in the insurance policy issued by Highlands to the Garcias and naming Secured Realty as the mortgagee/loss payee.[3] That clause provides:
15. Mortgage Clause.
The word "mortgagee" includes trustee.
If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.
If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:
a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
b. pays any premium due under this policy on demand if you have neglected to pay the premium;
c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
If the policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.
If we pay the mortgagee for any loss and deny payment to you:
a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.
"A loss payable clause is one method by which a lienholder or mortgagee protects its property interest. Generally, two types of loss payable clauses exist and are often referred to as (1) an open loss payable clause, and (2) a union, standard or New York clause." Progressive Am. Ins. Co. v. Florida Bank at Daytona Beach, 452 So.2d 42, 44 (Fla. 5th DCA 1984). An "open loss payable clause simply states that `loss, if any, is payable to B. as his interest shall appear', or uses other equivalent words, merely identifying the person who may collect the proceeds." 5A Appleman, Insurance Law and Practice, § 3401 (1970); see DeMay v. Dependable Ins. Co., 638 So.2d 96 (Fla. 2d DCA 1994); Independent Fire Ins. Co., 517 So.2d at 59. A union, standard, or New York clause, on the other hand, provides, in addition to the above quoted provision, language to the effect that "the owner/mortgagor's acts or neglect will not invalidate the insurance provided that if the owner/mortgagor fails to pay premiums due, the lienholder/mortgagee shall on demand pay the premiums." Progressive Am. Ins. Co., 452 So.2d at 44; see, e.g., Independent Fire Ins. Co., 517 So.2d at 61 n. 1; Appleman, supra, § 3401.
*855 In light of the foregoing, we find that the loss payable clause here involved falls into the union, standard, or New York category. The clause at issue is not as detailed as the one involved in Independent Fire Ins. Co., 517 So.2d at 61 n. 1. It does, however, clearly go further than the language involved in a simple open loss payable clause. Specifically, it provides that a denial of the owner/mortgagor's claim "shall not apply to a valid claim of the mortgagee, if the mortgagee" complies with the listed conditions. One of these is that the mortgagee pay any premium due on demand if the owner/mortgagor fails to pay the same. "In return for incurring premium liability, the lienholder/mortgagee is freed from the policy defenses which the insured might have against the owner/mortgagor." Progressive Am. Ins. Co., 452 So.2d at 44. In addition, the clause contemplates that there may be a change in ownership or occupancy of the insured property and requires the mortgagee to notify the insurer of any such changes of which it becomes aware.
Having determined that the loss payable clause at issue is of the New York variety, we turn our attention to the effect foreclosure had on Secured Realty's right to collect insurance proceeds for a loss occurring after foreclosure. In support of their position, the appellee cites to the well-established law, approved by this court in Pick v. Gilbert, 605 So.2d 182 (Fla. 3d DCA 1992), that "[w]here a ... loss occurs and a loss-payee is thus vested with rights under the insurance policy, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss-payee's interest in the proceeds to the extent that the debt has been satisfied." South Carolina Ins. Co. v. Pensacola Home & Savings Ass'n, 393 So.2d 1124 (Fla. 1st DCA 1980); see also Travelers Ins. Co. v. Providence Washington Ins. Group, 142 A.D.2d 968, 530 N.Y.S.2d 390 (1988), appeal denied, 73 N.Y.2d 704, 537 N.Y.S.2d 492, 534 N.E.2d 330 (1989); Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co., 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694 (1971). In light of this principle, appellee contends that Secured Realty's interest as a mortgagee was extinguished the moment it took back title to the encumbered properties, whose fair market value at the time exceeded the amount of the debt. Accordingly, appellee further argues, Secured Realty may not collect under the policy for a loss that occurred nearly a month later as it was then the owner of the property, and not a loss payee/mortgagee.
We reject appellee's argument that these "foreclosure after loss" cases may be applied in this "foreclosure before loss" context. In a thorough opinion widely cited with approval, the Supreme Court of Alabama directly addressed the present situation. "The question thus presented is whether the mortgagee may recover insurance proceeds under a policy containing a New York Standard Mortgage clause after the mortgage debt has been fully satisfied by foreclosure or otherwise." Nationwide Mut. Fire Ins. Co. v. Wilborn, 291 Ala. 193, 279 So.2d 460, 462 (1973). The Wilborn court analyzed and explained the reasons for the differing treatment accorded a mortgagee in the "loss after foreclosure context" as opposed to the "foreclosure after loss" situation.
In the "foreclosure prior to loss" situation... the foreclosure (or other change or increase of ownership or change of title as contemplated by the loss payee clause) occurs in the context of the insured property existing in its undamaged condition and the satisfaction of debt takes into account the value of such property in its undamaged condition prior to loss and the need for the insurance to follow the property. In the foreclosure after loss situation ... the foreclosure occurs in the context of the insured property having been damaged and the satisfaction of the debt takes into account the damaged condition of the property at the time of foreclosure.
Wilborn, 279 So.2d at 464. The court stated its holding as follows:
It appears that these two lines of cases have established a general rule and an exception to the general rule where a policy contains a New York Standard Mortgage clause. The general rule is that this loss payee clause affords protection to the mortgagee as his interest may appear before or after foreclosure or other methods *856 of change of ownership or title or other mediums of increased ownership of the mortgage property and the insurance follows the property; the exception to this general rule being that if the mortgage indebtedness is fully satisfied after loss by foreclosure or otherwise, then the insurance company is no longer liable to the mortgagee.
Id. at 465. This holding is in accord with the majority of courts that have examined the issue. See generally, Annotation, Right of Mortgagee, to Recover, Under Fire Insurance Policy Covering Him as "Mortgagee," for Loss or Injury to Property Thereafter Damaged or Destroyed by Fire, 19 A.L.R. 4th 778 (1983).
We therefore hold that Secured Realty retained an insurable interest in the Key Largo property after it acquired title to it by way of foreclosure. Additionally, Secured Realty had an insurable interest, as owner, at the time of the loss, on or about May 5, 1993.[4] Accordingly, that portion of the summary judgment finding that Secured Realty did not have an insurable interest at the time of the loss is reversed.
We now turn our attention to the trial court's alternative ruling, which reads as follows: "In the event it is later determined by the appellate court that the plaintiff retained an insurable interest after the foreclosure sale, then this Court finds alternatively that the plaintiff's insurable interest would be limited to an amount representing the difference between the amount of the mortgage debt and the amount realized from the post-loss sales of the secured properties." We disagree.
The reason for our disagreement was aptly stated by the Supreme Court of New Jersey as follows:
[T]he amount of recovery should not be limited to the mortgage debt in cases like the present one where loss occurs after acquisition of title.... After a mortgagee acquires title to property, its interest increases to that of an owner and as such, is no longer limited to the amount of the mortgage debt. The mortgagee accepts the property in undamaged condition in satisfaction of the mortgage debt; if the property happens to have greater value than the mortgage debt, the mortgagee should be able to retain the benefit gained through the acquisition by receiving insurance proceeds to restore the property to its original condition.
495 Corp. v.New Jersey Ins. Underwriting Ass'n, 86 N.J. 159, 430 A.2d 203, 207 (1981). Consequently, assuming all coverage conditions are satisfied, we hold that Secured Realty should be entitled "to receive insurance proceeds for the full amount of any loss occurring after it acquired title, subject only to the policy limit and the rights of superior mortgagees." Id., 430 A.2d at 208.
On remand, the issue of Secured Realty's compliance with the condition in paragraph 15 of the policy that it notify Highlands of any change in "occupancy or substantial change in risk" will likely arise. While we express no opinion on how this issue should be resolved, we direct the lower court's and parties' attention to Judge Zehmer's discussion of this issue in Independent Fire Ins. Co., 517 So.2d at 64-65.
In sum, by this opinion we hold that where, as here: (1) a mortgagee of certain real property is named as loss payee in a union, standard, or New York loss payable clause, (2) the mortgage takes title to the property by way of foreclosure and (3) a loss occurs after title has been so taken, the mortgagee retains an insurable interest in the property as owner, and is entitled to insurance proceeds for the full amount of the covered loss provided all other applicable coverage conditions have been met.
Reversed and remanded.
NOTES
[1] Taking the facts in the light most favorable to Secured Realty, the fair market value of the Key Largo property at the time of the sale was approximately $350,000; the Dade property was worth approximately $84,000, for a total of $434,000.
[2] Highlands also issued a notice of cancellation which indicates it was mailed on May 27, 1993 and was to take effect on July 13, 1993.
[3] In doing so, we apply the "general rule that contracts prepared by an insurance company are to be construed against the insurer, and where two interpretations of policy language can fairly be made, the one allowing the greatest coverage to the insured will prevail." Independent Fire Ins. Co. v. NCNB Nat'l Bank of Fla., 517 So.2d 59, 63 (Fla. 1st DCA 1987).
[4] We note, again taking the facts in the light most favorable to the non-moving party, that Secured Realty paid Highlands the premium due during the foreclosure period, when the Garcias failed to do so. We also note that Highlands, in its amended answer to the complaint, admitted that the policy was in effect on the date of the loss, subject to the terms, conditions, limitations and exclusions contained in said policy.