517 So.2d 59 (1987)
INDEPENDENT FIRE INSURANCE CO., Appellant,
v.
NCNB NATIONAL BANK OF FLORIDA, F/K/a Ellis Bank of Blountstown, Appellee.
No. BO-369.
District Court of Appeal of Florida, First District.
December 11, 1987.
*60 Charles A. Stampelos and John M. Bringardner, of McFarlain, Bobo, Sternstein, Wiley & Cassedy, Tallahassee, for appellant.
Frank A. Baker, Marianna, for appellee.
*61 ZEHMER, Judge.
Independent Fire Insurance Company (Independent) appeals an order granting a motion for partial summary judgment on the issue of Independent's liability to the mortgagee under a fire insurance policy. Appellate review of this non-final order is appropriate under rule 9.130(a)(3)(C)(iv), Florida Rules of Appellate Procedure.
The record contains evidence to support the following view of the facts. On December 7, 1981, the Gordons placed a first mortgage on their house with the Ellis Bank of Blountstown, now NCNB National Bank of Florida (NCNB), which required that the mortgagors maintain fire insurance in force on the property. In April 1983, the Gordons placed a second mortgage on their house with Associates Financial Services (Associates). In November 1983, when the Gordons became delinquent in maintaining the required insurance in force, NCNB obtained a new fire insurance policy with Independent Insurance Company through the McCaskill Insurance Company (McCaskill), who was authorized to sell Independent's policies pursuant to a brokerage agreement with Independent. The insurance policy covered the Gordons as named insured and insured NCNB as mortgagee.[1] NCNB also purchased, through McCaskill, a flood insurance policy under the National Flood Insurance Program.
On February 3, 1984, the Gordons deeded the house to Associates by quit claim deed. On March 12, 1984, Associates advised NCNB that the Gordons had deeded the property to them, that the house had been flooded, and that, due to the flood damage, the Gordons were no longer residing in the house. That same day, NCNB gave notice of the flood damage to Bill Stoutamire, an employee of McCaskill. Whether McCaskill was also told of the change in ownership is in dispute. In any event, for purposes of this appeal, it does not appear that McCaskill informed Independent of any of these changes.
When Jerry Richards, a vice-president of NCNB, personally examined the house on either March 12 or 13, it was under several feet of water. The water receded, and on March 28, the house was completely destroyed by fire. McCaskill's report to Independent indicated that an electrical short probably caused the fire. When NCNB demanded payment of the fire insurance coverage, Independent denied coverage on the ground that it had not been notified of the change in ownership, the change in occupancy and the flood damage, which it contends created an increased hazard, and this failure to comply with the notice requirement voided the policy.
NCNB filed suit to foreclose the mortgage against the Gordons and Associates. It also sued Independent on the fire insurance policy, alleging the existence of coverage, that a loss had occurred, and that it had complied with the provisions of the insurance policy and had done all things necessary for payment of the claim. Independent's *62 answer denied the material allegations of liability and raised seven affirmative defenses: (1) NCNB failed to notify Independent of the change in ownership; (2) NCNB failed to notify Independent of the change in occupancy; (3) NCNB failed to notify Independent of the increased hazard; (4) NCNB failed to notify Independent of the flood damage to the house, which would greatly reduce the amount of a recovery; (5) NCNB's failure to notify Independent of the increased hazard invalidated the coverage as a matter of law; (6) Independent was entitled to a set-off for all sums paid by a collateral source; and (7) McCaskill Insurance Company was not an authorized, actual, or apparent agent of Independent.
Associates filed a cross-claim against Independent alleging that Independent had received, through its agent McCaskill, notice of Associates' interest in the property. Independent answered and filed the same seven affirmative defenses against Associates.
Independent then filed a third party complaint against McCaskill, alleging that McCaskill was acting as an agent for Independent, had a fiduciary duty to inform Independent of any communication relating to any insurance policy issued by Independent, and that McCaskill had breached this fiduciary duty when it failed to inform Independent of the change in ownership, the change in occupancy, and the flood damage. McCaskill filed a motion for summary judgment on Independent's third party claim on the ground that pursuant to the brokerage agreement, it was a broker for Independent, not its agent, and as a broker, it was the agent of the insured, not the insurer, and thus owed no duty to Independent. The court orally granted McCaskill's motion "on the basis that a brokerage relationship existed here." NCNB filed a motion for rehearing and clarification of that order to determine whether, under that ruling, McCaskill nevertheless could have had apparent authority to act for Independent so that NCNB was justified in relying on McCaskill to give notice to Independent. That motion remained pending at the time the appealed order was entered.
NCNB also filed a motion for partial summary judgment on liability against Independent on the grounds that (1) the mortgage clause did not create a duty to inform Independent of the various changes; (2) assuming NCNB came under a duty to notify Independent, the policy was not forfeited because a reasonable time had not elapsed between NCNB's gaining knowledge of the various changes and the occurrence of the fire; and (3) Independent must show that it would and could have canceled the policy prior to the loss in order for the policy to be forfeited. The trial court granted NCNB's motion without comment in the order, and this appeal followed.
On appeal, Independent argues that under the mortgage clause (see footnote 1) the insurance policy became null and void when NCNB failed to give the required notice of the stated changes within a reasonable time after gaining knowledge thereof. At the very least, it argues, material questions of fact remain in dispute in respect to NCNB's allegations and Independent's affirmative defenses that preclude the entry of summary judgment on liability. NCNB, on the other hand, argues that the mortgage clause required it to give notice only if the change in ownership, occupancy, or condition of the property was not permitted by the policy. Thus, it argues, since all of the changes to the property were permitted under the policy, no duty to give notice ever arose.
We first review the principles of law applicable to the basic question presented  whether NCNB is entitled to judgment as a matter of law on the record before us. In deciding this question, all inferences of fact must be made in favor of Independent as the party opposing the motion, and if any view of the facts fails to support NCNB's position as a matter of law, the summary judgment must be reversed. O'Quinn v. Seibels, Bruce & Co., 447 So.2d 369, 371 (Fla. 1st DCA 1984).
Where coverage of a mortgagee's interest is required, fire insurance policies usually contain either of two distinct types of mortgage clauses. An "open" mortgage *63 clause states only that any loss is payable to the named mortgagee as his interest shall appear and subjects the mortgagee to any defenses the insurance company may have against the owner or mortgagor of the property based on the latter's neglect or default. A "standard union" (also known as a "New York") mortgage clause contains similar provisions, but characteristically provides, in addition, that the mortgagee's coverage will not be invalidated by a foreclosure, a change in ownership, a more hazardous use of the property, or a loss caused by the neglect of the owner, provided that the mortgagee pays any premium demanded should the owner fail to do so. See Progressive American Ins. Co. v. Florida Bank at Daytona Beach, 452 So.2d 42 (Fla. 5th DCA 1984); 5A Appleman, Insurance Law and Practice, § 3401 (1970). A standard union mortgage clause has been held to create a separate agreement between the insurance company and the mortgagee in which policy provisions of the insurance contract not in conflict with the mortgage clause become part of this separate contract. National Casualty Co. v. General Motors Acceptance Corp., 161 So.2d 848 (Fla. 1st DCA 1964); 5A Appleman, supra, § 3401, n. 31.
Generally, where the determination of the insurer's liability depends upon an interpretation of the legal effect of policy language, the issue is one of law appropriate for summary adjudication. Davis v. Nationwide Life Ins. Co., 450 So.2d 549 (Fla 5th DCA 1984), pet. for rev. denied, 459 So.2d 1041 (Fla. 1984); Buckner v. Physicians Protective Trust Fund, 376 So.2d 461 (Fla. 3d DCA 1979). It is also the general rule that contracts prepared by an insurance company are to be construed against the insurer, and where two interpretations of policy language can fairly be made, the one allowing the greatest coverage to the insured will prevail. Travelers Ins. Co. v. C.J. Gayfer's & Co., 366 So.2d 1199 (Fla. 1st DCA 1979). Thus it has been stated that where ambiguous, equivocal, or uncertain terms are used in an insurance policy, "those terms are to be interpreted liberally in the insured's favor; however, plain and unambiguous language requires no interpretation and should be given its popular and usual significance absent public policy reasons to the contrary." Progressive American Ins. Co. v. Florida Bank at Daytona Beach, 452 So.2d at 45.
The Independent policy required the Gordons, as owners and named insureds, to give such notice, but it also contained a standard union mortgage clause protecting the mortgagee from loss of coverage due to the owner's default. But that clause also required NCNB to give notice of increased hazards or specified changes in the property when it learned of them. The critical question on this appeal, therefore, is whether the undisputed facts demonstrate, as a matter of law, that NCNB has fully complied with these requirements and is entitled to partial summary judgment on liability under rule 1.510, Florida Rules of Civil Procedure. To decide that question, we must first review the respective rights of the parties and the legal consequences of NCNB's default in complying with this requirement.
The mortgage clause in Independent's policy plainly and unambiguously states that coverage to the mortgagee shall not be invalidated by the inaction or neglect of the insured owner or mortgagor, including foreclosure or notice of sale, change in title or ownership, or occupation of the property for purposes more hazardous than permitted by the policy. Consequently, the insurance coverage for NCNB will remain in effect despite the occurrence of the described changes and the owner's failure to report them, provided that NCNB complies with the following two conditions: (1) Should the owner neglect to pay the premium when due, the mortgagee shall, upon demand, pay the same; (2) NCNB shall notify Independent of "any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the mortgagee" and, if such change or increased hazard is not permitted by the policy, Independent shall note that fact on the policy, and NCNB shall pay, on demand, any additional premium assessed by Independent for the change or increased hazard so noted; "otherwise, this policy shall be *64 null and void." The mortgage clause further provides that Independent may cancel the policy at any time as provided by its terms, but the mortgage clause shall continue in effect for ten (10) days after notice to NCNB before cancellation of that coverage may become effective.
The language of the mortgage clause is, for the most part, plain and unambiguous, and we have not been made aware of any reason why the language should not be given its usual meaning and significance. The policy language expresses the general intention that, despite the owner's acts of neglect or default which might terminate the owner's coverage, NCNB's coverage under the mortgage clause will continue in effect until NCNB has been given notice of additional premium due and fails to pay it on demand, or Independent cancels the coverage in accordance with the cancellation provisions and the ten (10) day notice period has expired. While NCNB is specifically required to notify Independent of certain changes or increase in hazard coming to its knowledge, NCNB is not placed under any affirmative duty to investigate or monitor the situation or the property so as to remain constantly informed about such changes. This language of the clause manifests two dominant purposes. One is to afford Independent an opportunity to determine whether an additional premium is due and payable to continue coverage in force because the reported changes are not permitted under the original policy, or the coverage should be canceled outright because the change in use or occupancy exceeds an acceptable risk. Second, the mortgagee is protected against unknowing or inadvertent loss of coverage by continuing the mortgage clause in force until the mortgagee either fails or refuses to pay a premium upon demand, or the insurer gives notice of termination under the ten (10) day provision, thereby affording the mortgagee an opportunity to obtain alternative insurance should that be necessary to protect its interest.
The only ambiguity we have observed in the mortgage clause is whether the words, "otherwise this policy shall be null and void," are self-executing in the sense that coverage becomes void and automatically terminates without further action by the insurer upon the mortgagee's failure to give required notice. It is well established in Florida decisions that, in general, when an insurer is entitled to receive notice as a condition precedent to maintaining an action on a claim, a violation of that provision will not operate to defeat coverage absent substantial prejudice to the insurer. See, e.g., Bankers Insurance Co. v. Macias, 475 So.2d 1216 (Fla. 1985); National Gypsum Co. v. Travelers Indemnity Co., 417 So.2d 254 (Fla. 1982); Tiedtke v. Fidelity & Casualty Co., 222 So.2d 206 (Fla. 1969); Wolfson v. Insurance Co. of Florida, 451 So.2d 1005 (Fla. 3d DCA 1984). A provision requiring notice of an increase in hazard is common in property insurance contracts. See generally Couch on Insurance 2d, §§ 37A:283-297. But such notice requirement is not a condition precedent to the making of the contract and creation of coverage, nor is it a condition precedent (as is a notice of loss) to the mortgagee's right to recover on a claim for loss falling within the terms of the mortgage clause. Rather, such notice requirement is a condition subsequent to the contract in that it is intended to void, i.e., extinguish, existing policy coverage in the event of a default in complying with the condition. Accordingly, the mortgagee's failure to give notice of occupancy change or increase in hazard is an affirmative defense which places the burden on the insurer to prove that such notice was required, that the mortgagee has defaulted in giving such notice, and that the insurer has suffered a loss or damage as a result. See Smith v. Peninsular Insurance Co., 181 So.2d 212 (Fla. 1st DCA 1966); Weems v. American Security Ins. Co., 450 So.2d 431 (Miss. 1984). It follows that Independent can avoid liability to NCNB on the mortgage clause only by showing that a described "change" or "increase in hazard" falling within the meaning of the policy has occurred, that such change or increase was so substantial that the risk insured by Independent materially increased, that such change occurred after the effective date of the insurance, and that NCNB's violation *65 of the notice requirement was a legal cause of loss to Independent, that is, it caused the insurer's failure to cancel the policy or demand an additional premium. See Weems v. American Security Ins. Co., 450 So.2d 431.
We do not, therefore, entirely accept Independent's construction of the notice requirement in the mortgage clause. In view of the ambiguity in the "null and void" language of the clause, and our obligation to construe it most favorably for the insured in context with the dominant purposes to be accomplished by the clause, we hold that the coverage to NCNB will become null and void in a self-executing sense only when the insurer has made demand for additional premium and NCNB has failed to pay it. The "null and void" clause is not self-executing upon default in giving notice of changed conditions unless the insurer demonstrates that such default has caused it to sustain actual loss or damage.[2]
On the other hand, neither do we accept NCNB's argument that, as a matter of law, it was under no duty to give notice to Independent because the changes were "permitted by this policy," or that, even if NCNB had defaulted in giving the required notice, a reasonable time had not elapsed between the time NCNB gained such knowledge and the occurrence of the fire. The policy language plainly obligates NCNB to give notice of any changes falling within the policy language whenever they should come to NCNB's knowledge, so that Independent could evaluate such changes and determine their effect on the risk being insured. Whether the alleged changes effected a material and substantial increase in hazard is a question of fact for the jury's determination. See Smith v. Peninsular Insurance Co., 181 So.2d 212. On this record, material facts remain in dispute as to whether NCNB gave notice of the changes, and whether the changes alleged in Independent's affirmative defenses were so substantial and material to the insured risk that NCNB's failure to give notice constituted a material default of this condition. Material issues regarding McCaskill's apparent authority and conduct remain in dispute.
Moreover, as the policy did not specify a time within which notice should be given, notice was required to be "given with `reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the particular case.'" Laster v. United States Fidelity and Guaranty Co., 293 So.2d 83, 86 (Fla. 3d DCA 1974); Couch on Insurance 2d, § 37A:285. Whether notice, if shown to be required, was given within a reasonable time is a matter of disputed fact on the record before us.
As we have often stated, "A summary judgment is appropriate only when `the facts are so crystallized that nothing remains but questions of law' and there is not the `slightest doubt' as to any issue of material fact. Harris v. Lewis State Bank, 436 So.2d 338, 340 (Fla. 1st DCA 1983)." O'Quinn v. Seibels, Bruce & Co., 447 So.2d 369, 371 (Fla. 1st DCA 1984). We hold, therefore, that it was error to grant NCNB summary judgment on the issue of liability, and remand for further proceedings.
REVERSED AND REMANDED.
JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] The pertinent text of that mortgage clause reads as follows:

Loss, if any, under this policy, shall be payable to the ... mortgage ... and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand, pay the same. Provided, also, that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.
This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall the then [sic] cease, and this Company shall have the right, on like notice, to cancel this agreement.
[2] We are not required to decide at this time whether NCNB's failure to give notice when required raises a presumption of prejudice recognized in several of the Florida cases cited above or whether that presumption, if applicable to these circumstances, is sufficient to make a prima facie showing of loss or damage.