LABARGA, J.
This case is before the Court for review of the decision of the Fifth District Court of Appeal, sitting en banc, in State Farm Automobile Insurance Co. v. Curran, 83 So.3d 793 (Fla. 5th DCA 2011). In its decision the district court ruled upon the following question, which the court certified to be of great public importance:
*1073 WHEN AN INSURED BREACHES A [COMPULSORY MEDICAL EXAMINATION] PROVISION IN AN UNINSURED MOTORIST CONTRACT, (IN THE ABSENCE OF CONTRACTUAL LANGUAGE SPECIFYING THE CONSEQUENCES OF THE BREACH) DOES THE INSURED FORFEIT BENEFITS UNDER THE CONTRACT WITHOUT REGARD TO PREJUDICE, OR DOES THE PREJUDICE ANALYSIS DESCRIBED IN BANKERS INSURANCE CO. V. MACIAS, 475 So.2d 1216, 1218 (Fla.1985), APPLY? IF PREJUDICE MUST BE CONSIDERED, WHO BEARS THE BURDEN OF PLEADING AND PROVING THAT ISSUE?
Id. at 806-07. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. In line with the legal analysis we adopt, we clarify the issue presented by rephrasing the certified question as follows:
WHEN AN INSURED BREACHES A COMPULSORY MEDICAL EXAMINATION PROVISION IN AN UNINSURED MOTORIST CONTRACT, DOES THE INSURED FORFEIT BENEFITS UNDER THE CONTRACT WITHOUT REGARD TO PREJUDICE? IF PREJUDICE MUST BE CONSIDERED, WHO BEARS THE BURDEN OF PLEADING AND PROVING THAT ISSUE?
We answer the first portion of the certified question in the negative. As to the second portion of the certified question, we hold that the insurer as the defensive party pleading an affirmative defense has the burden of pleading and proving prejudice. For the reasons explained below, we approve the decision of the Fifth District.
BACKGROUND AND FACTS
The facts of this case are fully set forth in the Fifth District’s opinion in Curran. Id. at 794-800. We briefly summarize the facts here. This case arose as a result of a June 2006 traffic accident involving Robin Curran, insured by State Farm Automobile Insurance Company (State Farm), and the underinsured motorist who rear-ended Curran’s car. Subsequently, Curran and the underinsured motorist reached a settlement agreement, which was approved by State Farm. On July 19, 2007, through counsel, Curran requested her $100,000 underinsured motorist policy limits and offered to settle and release State Farm from an uninsured motorist (UM) lawsuit if it tendered the policy limits no later than August 18, 2007. In the letter to State Farm, Curran indicated that her damages were estimated to be $3.5 million because she suffered from reflex sympathetic dystrophy syndrome (RSD) type l.[1] On August 17, 2007, State Farm contacted Cur-ran’s counsel to schedule a compulsory medical examination (CME) with Dr. Joseph Uriechio[2] pursuant to the terms of *1074 the policy, which provide that a claimant has the duty to
be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the person upon written request. The person or his or her legal representative if the person is dead or unable to act shall authorize us to obtain all medical reports and records.
Further, in a different section, the policy also provided that “[t]here is no right of action against [State Farm] until all terms of this policy have been met.”
After this initial letter, Curran and State Farm exchanged several contentious letters regarding attempts by State Farm to schedule the CME.[3] Ultimately, however, Curran refused to attend a CME despite receipt of a reservation of rights letter from State Farm stating that her failure to “assist and cooperate” with the insurer may result in a denial of coverage. Instead, Curran filed suit against State Farm. State Farm answered and asserted an affirmative defense contending that Curran was not entitled to coverage under the policy because she breached the CME provision, which State Farm characterized as a condition precedent to coverage under the policy. Thereafter, State Farm moved for summary judgment on the coverage issue claiming it was entitled to decline coverage as a matter of law. Curran also filed a motion for summary judgment contending that the CME provision was not a condition precedent to coverage and that, at worst, her complaint was filed prematurely. Curran further claimed that she did not refuse to submit to a CME, but only asserted reasonable requests to protect her own personal interests, which requests had been ignored by State Farm. Following the hearing on both motions, the trial court entered its order granting summary judgment in favor of Curran.[4]
Curran’s complaint then proceeded to a jury trial, which culminated in an award of $4,650,589 in damages to Curran. Curran, 83 So.3d at 800. The trial court entered a judgment against State Farm for the $100,000 UM policy limits and State Farm appealed the judgment to the Fifth District.[5]
On appeal, the Fifth District sitting en banc concluded that under these undisputed facts, Curran did not act reasonably in insisting that State Farm abandon its contractual rights as a condition to an exami *1075 nation and, consequently, breached the contract when she failed to attend the CME. It concluded, however, that in order “to avoid liability under the insurance policy based on noncompliance with the CME clause, it was essential that State Farm plead and prove a material breach, which means a breach causing prejudice.”[6] Id. at 803.
In concluding that State Farm must plead and prove prejudice, the Fifth District relied on this Court’s precedent in Bankers Insurance Co. v. Macias, 475 So.2d 1216 (Fla.1985), and Custer Medical Center v. United Automobile Insurance Co., 62 So.3d 1086 (Fla.2010), for support.[7] The district court noted that in Macias, this Court concluded that neither the failure to timely report a claim nor the breach of the duty to cooperate gives rise to the automatic forfeiture of insurance benefits absent prejudice to the insurer. Curran, 83 So.3d at 802. Applying Macias to the contractual provision here, the Fifth District concluded that the provision was analogous to the claims notice provision discussed in Macias, but also overlapped with the insured’s duty to cooperate in that the insurer was given the opportunity to obtain evidence from the insured. Further, the court observed that in its reservation of rights letter dated September 18, 2007, State Farm treated Curran’s actions as a breach of the duty to cooperate. However, the Fifth District concluded that a determination of whether the CME clause in the contract was more analogous to a claims notice provision or a cooperation clause was relevant only to the question of who has the burden on the issue of prejudice. Curran, 83 So.3d at 802. The court then noted that Custer resolved this issue by finding that a “CME provision is a ‘condition subsequent,’ the nonoccurrence of which is an affirmative defense that the insurer has the burden to plead and prove.” See Curran, 83 So.3d at 802-03 (citing Custer, 62 So.3d at 1097-99).
Having determined that in order to defeat coverage State Farm had the burden to plead and prove that Curran’s breach caused prejudice, the Fifth District held *1076 that State Farm failed to meet its burden, stating:
Even had State Farm argued prejudice, the record refutes any such allegation, at least to the extent that it would affect entitlement to the UM contract benefits. Immediately upon filing suit (seven days after the scheduled examination), Cur-ran offered to submit to a medical examination pursuant to Florida Rule of Civil Procedure 1.360 (also well before the expiration of the time period under the Civil Remedies Notice). State Farm declined Curran’s offer, electing instead to defer an examination until after the court first decided “if your client’s failure to cooperate and failure to comply with all policy terms, conditions, limits, provisions and applicable Florida law affects coverage under the provisions which you now seek benefits.” After the lower court ruled, the record reflects that Curran submitted to a CME with Dr. Uricchio. State Farm elected not to call Dr. Uricchio as a trial witness. There is no indication that the validity of the CME was affected by the short lapse of time attributable to Curran or that the rule 1.360 examination was materially different from the CME State Farm would have performed under the contract. The effect of Curran’s breach was clearly inconsequential as it pertained to the merits of her claim for UM benefits.
Id. at 806 (footnote omitted). The Fifth District then certified a question to this Court as one involving great public importance.[8] Curran, 83 So.3d at 807.
State Farm contends that Curran’s failure to attend a CME is a breach of a condition precedent to both coverage and to suit, which constitutes a material breach of the policy resulting in forfeiture of coverage irrespective of any showing of prejudice to State Farm. State Farm also contends that if prejudice is an issue, this Court should remand to the trial court so that State Farm has an opportunity to prove Curran’s breach resulted in actual prejudice. Because Curran does not contest the Fifth District’s finding that she breached the contract, the pertinent issue on appeal is whether the breach of such a provision precludes recovery under the policy as a matter of law without regard to whether the breach resulted in actual prejudice to the insurer. For the following reasons, we agree with the Fifth District and hold that the forfeiture of benefits under the policy will not automatically result upon an insured’s breach of a CME provision unless the insurer pleads and proves actual prejudice as an element of its affirmative defense. In addition, because the undisputed facts demonstrate that State Farm was not prejudiced, we conclude that it is unnecessary to remand the case for further proceedings relating to a determination on the question of prejudice.
ANALYSIS
Pursuant to section 627.727(1), Florida Statutes (2007), insurers issuing motor vehicle policies in Florida are mandated by statute to offer uninsured motorist coverage unless the insured has expressly rejected the coverage. The term “uninsured motor vehicle” includes an un-derinsured motor vehicle, which occurs where the liability insurer has provided lower bodily injury liability limits than the damages sustained by the person legally entitled to recover damages. § 627.727(3)(b), Fla. Stat. (2007). Uninsured motorist coverage is intended to pro *1077 tect persons who are legally entitled to recover damages for injuries caused by owners or operators of uninsured or un-derinsured motor vehicles. Flores v. Allstate Ins. Co., 819 So.2d 740, 744 (Fla.2002). In addition, we have stressed that the statute is not designed “for the benefit of insurance companies or motorists who cause damage to others.” Young v. Progressive Se. Ins. Co., 753 So.2d 80, 83 (Fla.2000) (citing Brown v. Progressive Mut. Ins. Co., 249 So.2d 429, 430 (Fla.1971)). Indeed, section 627.727 was intended to place the injured party in the same position as he or she would have been had the tortfeasor been insured. See Moore v. Allstate Ins. Co., 570 So.2d 291, 293 (Fla.1990). We are mindful of these principles when deciding whether an insured’s failure to attend a CME prior to filing suit results in automatic forfeiture without regard to prejudice when such a breach is raised by an insurer as an affirmative defense.
Prior to turning to the language of the insurance provisions at issue here, we briefly review the role of compulsory medical examinations in the UM coverage context. As was the case here, after an insured has been injured in an accident with an uninsured or underinsured motorist, an insured will generally settle a claim with the uninsured or underinsured motorist with approval from the insured’s UM coverage carrier. See § 627.727(6)(a), Fla. Stat. (2007) (providing that if an injured person agrees to settle a claim with a liability insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted to all underinsured motorist insurers that provide coverage). The insured then submits a claim for UM benefits to the insurer alleging legal entitlement to additional damages because the total loss was not covered by the underin-sured motorist’s policy. Here, Curran sent a demand letter to State Farm requesting payment of the policy limits.
As a result of submitting the notice of a claim, the insured then typically has a duty under the insurance policy to provide medical bills, medical records, and any other information the insurer believes will help with processing the claim. If the UM insurer, after review of information compiled from medical bills, medical records, and other information that is provided to substantiate an insured’s claim, questions the severity of the injury, it may request a medical examination to aid its review of the insured’s claim.[9] Cf. U.S. Sec. Ins. Co. v. Cimino, 754 So.2d 697, 701 (Fla.2000) (noting that, in a personal injury protection benefits context, a medical examination is a potential step in the direction of litigation because the insured is claiming an entitlement to benefits and the insurer is questioning the necessity for same). Thus, a CME is typically requested to provide the insurer additional information used to determine whether the insured is legally entitled to recover damages after an injury is sustained and a UM claim has been submitted.
Given this context, we reject the approach State Farm has asked this Court to approve. Specifically, State Farm argues that the provision at issue is a condition precedent to coverage and to suit, the breach of which constitutes a material breach of the policy resulting in forfeiture *1078 of coverage irrespective of any showing of prejudice to the insurer. Curran, on the other hand, argues that the provision is a condition subsequent requiring proof of prejudice. The terms “condition precedent” and “condition subsequent” are defined as follows in Florida:
A condition precedent is one that is to be performed before the contract becomes effective. Conditions subsequent are those that pertain not to the attachment of the risk and the inception of the policy but to the contract of insurance after the risk has attached and during the existence thereof. A condition subsequent presupposes an absolute obligation under the policy and provides that the policy will become void, or its operation defeated or suspended, or the insurer relieved wholly or partially from liability, upon the happening of some event or the doing or omission of some act.
31 Fla. Jur.2d Insurance § 2686 (2013) (footnotes omitted).[10]
Pursuant to the terms of the automobile insurance policy in this case, Curran was required to
be examined by physicians chosen and paid by [State Farm] as often as we reasonably may require. A copy of the report will be sent to the person upon written request. The person or his or her legal representative if the person is dead or unable to act shall authorize us to obtain all medical reports and records.
Further, a section titled “Suits Against Us” provides in pertinent part that “[t]here is no right of action against [State Farm] until all terms of this policy have been met.” According to State Farm, the CME provision is a condition precedent to suit and coverage because of the “Suits Against Us” provision. We disagree. As discussed below, we conclude that a CME provision in the UM context is a post-loss obligation of the insured and is not a condition precedent to coverage.
First, in Custer, we held that an insured’s attendance at a medical examination was not a condition precedent to the existence of an automobile insurance policy that provided personal injury protection (PIP) benefits. See 62 So.3d at 1100. The Court reasoned that medical examinations in a PIP context are not scheduled prior to the existence of a policy or prior to an injury, but instead are scheduled after a policy has been issued, injuries have been sustained, and the insured has notified the insurer of a loss. Id. at 1099. We further noted that “an unreasonable failure to attend a requested medical examination may be a condition subsequent that divests the insured’s right to receive further PIP benefits.” Id. at 1098-99. Similarly, as discussed above, compulsory medical examinations in the UM coverage context may be requested by insurers after a policy has been issued, an insured has sustained an accident or loss, and an insured has submitted a claim for UM benefits.
Second, the “no action” language in the policy applies to every term of the policy, regardless of whether the insured’s duties are capable of being performed prior to filing an action against the insurer. Consequently, adherence to State Farm’s argument would turn every duty, including the duty to assist and cooperate,[11] eonsid- *1079 ered a condition subsequent in Macias, into a condition precedent to coverage and suit.[12] Macias, 475 So.2d at 1218 (failure to cooperate is a condition subsequent and it is proper to place the burden of showing prejudice on the insurer). Further, the term “until” suggests that any cause of action filed before compliance with all of the terms of the policy is simply premature, which generally results in an abatement of the action. See Bierman v. Miller, 689 So.2d 627, 628 (Fla. 3d DCA 1994) (“The proper remedy for premature litigation is an abatement or stay of the claim for the period necessary for its maturation under the law.” (quoting Angrand v. Fox, 552 So.2d 1113, 1115 (Fla. 3d DCA 1989))).
Accordingly, a CME provision in the UM coverage context is not a condition precedent to coverage and we find that an insured’s breach of this provision should not result in post-occurrence forfeiture of insurance coverage without regard to prejudice. Cf. Macias, 475 So.2d at 1217-18 (noting that a showing of prejudice is relevant when an insured breaches a cooperation clause, which is a condition subsequent, or a notice provision); Tiedtke v. Fidelity & Cas. Co. of New York, 222 So.2d 206, 209 (Fla.1969) (adopting the view that a showing of prejudice is relevant when considering whether an insured’s breach of a notice provision relieves the insurer of liability).
Having concluded that prejudice is a necessary consideration when the insured breaches a CME provision, we also hold that the burden of pleading and proving that issue is on State Farm. State Farm raised this issue as an affirmative defense. “An affirmative defense is a defense which admits the cause of action, but avoids liability, in whole or in part, by alleging an excuse, justification, or other matter negating or limiting liability.” St. Paul Mercury Ins. Co. v. Coucher, 837 So.2d 483, 487 (Fla. 5th DCA 2002). “[T]he plaintiff is not bound to prove that the affirmative defense does not exist.” Custer, 62 So.3d at 1096. Further, in Macias, we held that “[a] failure to cooperate is a condition subsequent and it is proper to place the burden of showing prejudice on the insurer.” 475 So.2d at 1218; accord Ramos v. Nw. Mut. Ins. Co., 336 So.2d 71 (Fla.1976) (an insurer may not avoid liability under its policy by merely showing the violation of a clause requiring assistance and cooperation of the insured without a further showing of how this violation prejudiced the insurer). Accordingly, because the insurer is the defensive pleader, it has the burden of pleading and persuasion of each element of the defense.
Given the UM statute’s intended purpose of protecting persons who are legally entitled to recover damages for injuries caused by owners or operators of uninsured or underinsured motor vehicles, our conclusion that the insurer must plead and prove prejudice as an element of its affirmative defense fully comports with this purpose. See Flores, 819 So.2d at 744 (discussing the intended purpose of the UM coverage statute). It also places the injured party in the same position as the injured party would have been had the tortfeasor been insured. See Moore, 570 So.2d at 293. Further, the insurer still has two remedies for such a breach: (1) it may seek to abate the proceedings until the insured has complied with the CME *1080 provisions; or (2) if the insured’s breach did indeed prejudice the insurer, it may assert a breach of the CME requirement as a complete defense to coverage under the policy upon proof of the prejudice. We now turn to State Farm’s argument that this Court should remand the case to the trial court for a determination regarding prejudice.
We agree with the Fifth District that the undisputed facts demonstrate that State Farm was not prejudiced by Cur-ran’s refusal to submit to a CME prior to the initiation of litigation. Although State Farm did not advance a specific argument that it was prejudiced below, the record demonstrates that Curran’s refusal to submit to a CME did not prejudice State Farm in any fashion. Shortly after filing suit, Curran offered to submit to a medical examination pursuant to Florida Rule of Civil Procedure 1.360. State Farm, however, elected to defer the examination until after the trial court determined whether Curran had forfeited coverage under the policy. After the trial court found that Curran had not unreasonably refused to attend the examination, Curran attended a CME with Dr. Uricchio, the same expert that State Farm requested Curran see pri- or to litigation. Dr. Uricchio was not called to testify as a trial witness and there is nothing in the record that indicates the delayed CME affected the integrity of the evaluation. Thus, the record is devoid of evidence that would suggest that Curran’s refusal to submit to a CME prior to suit prejudiced State Farm. Accordingly, it is unnecessary to remand the case for determination of prejudice. See Tiedtke, 222 So.2d at 209 (unnecessary to remand case for determination of prejudice where record amply establishes no prejudice to insurer).
CONCLUSION
For the reasons set forth above, we answer the restated certified question by holding that an insured’s breach of a CME provision in an uninsured motorist policy of insurance does not result in forfeiture of benefits unless the insurer pleads and proves it was prejudiced as part of its affirmative defense. Accordingly, we approve the decision of the Fifth District in State Farm Automobile Insurance Co. v. Curran, 83 So.3d 793 (Fla. 5th DCA 2011).
It is so ordered.
PARIENTE and PERRY, JJ., concur.
LEWIS, J., concurs in result, with an opinion.
QUINCE, J., concurs in result.
POLSTON, C.J., dissents with an opinion in which CANADY, J. concurs.

. Reflex sympathetic dystrophy syndrome (RSD), also known as complex regional pain syndrome, "is an uncommon form of chronic pain that usually affects an arm or leg.” Mayo Clinic, Complex regional pain syndrome, Definition (Mar. 31, 2011), http://www. mayoclinic.com/health/complex-regional-pain-syndrome/DS00265 (last visited Nov. 5, 2012). RSD "typically develops after an injury, surgery, stroke or heart attack, but the pain is out of proportion to the severity of the initial injury, if any.” Id. Type 1 RSD "occurs after an illness or injury that [did not] directly damage the nerves in [an] affected limb.” Mayo Clinic, Complex regional pain syndrome, Causes (Mar. 31, 2011), http:// www.mayoclinic.com/health/complex-regional-pain-syndrome/DS00265/ DSECTION=causes (last visited Nov. 5, 2012).

. Curran’s physician also referred her to Dr. Uriechio independently. Curran stated in her deposition that she attempted to schedule an appointment with Dr. Uriechio, but she was informed that he was no longer scheduling appointments with new patients. In addition, *1074 the trial court took judicial notice that Dr. Uricchio had over thirty years of experience as a testifying expert on behalf of insurers. State Farm, however, claimed that Dr. Uric-chio was an expert on RSD and often lectured about RSD on behalf of plaintiffs.

.A complete discussion of the substance of these letter exchanges is set forth in Curran, 83 So.3d at 795-99. Most of the letters involved Curran's attempts to condition her attendance at the CME on provisos that would prevent State Farm from fully asserting its contractual rights under the policy. For instance, Curran would only submit to a CME if it were the only CME State Farm would request both prior to litigation and during potential litigation. Further, Curran sought to limit State Farm’s choice of physicians to conduct the examination.

. The trial court found that State Farm’s request for a CME was “not unreasonable,” but also found that Curran’s requested conditions were "not unreasonable,” except for the condition that State Farm waive further examinations. Thus, the trial court concluded that Curran did not refuse to appear for the examination as asserted by State Farm.

. The Fifth District initially rendered a panel decision in favor of State Farm, finding that Curran refused to attend a scheduled CME prior to filing suit and that Curran’s breach prohibited recovery under the policy. The Fifth District, however, granted Curran’s motion for rehearing en banc and withdrew the panel opinion. Curran, 83 So.3d at 794-95.

. The Fifth District affirmed the trial court's decision on a different basis. Specifically, the trial court granted summary judgment in favor of Curran finding that she had not refused to appear for the CME as argued by State Farm. The Fifth District, however, held that she refused to appear, but that State Farm did not prove it was prejudiced by Curran's failure to attend the CME. Thus, Curran’s breach of the CME provision did not result in forfeiture of UM benefits.

. In Bankers Insurance Co. v. Macias, the Court held that a presumption of prejudice arises where an insured fails to give timely notice of an accident to the insurer. 475 So.2d at 1217. In reaching this result, the Court noted that different presumptions arise depending on which duty has been breached. Specifically, if the insured breaches a notice provision, prejudice to the insurer is presumed, but may be rebutted, whereas if a cooperation clause has been breached, the insurer must show a material failure to cooperate which substantially prejudiced the insurer. Id. at 1217-18. Further, the Court held that a "failure to cooperate is a condition subsequent and it is proper to place the burden of showing prejudice on the insurer.” Id. at 1218.
In Custer Medical Center v. United Automobile Insurance Co., a case primarily discussing the limitations of second-tier certiorari review, we held that an insured’s attendance at a medical examination was not a condition precedent to the existence of an automobile insurance policy that provided personal injury protection benefits. 62 So.3d at 1100. The Court reasoned that medical examinations in the personal injury protection context, as opposed to the life insurance context, were not scheduled prior to the existence of an automobile insurance policy or prior to an injury, but instead occur when the insured has sustained an accident after a policy has been issued. Id. at 1099. Thus, the Court also held that the insurer has the burden of proof on this issue. Id. at 1100.

. The Fifth District also certified conflict with De Ferrari v. Government Employees Ins. Co., 613 So.2d 101 (Fla. 3d DCA 1993), and Goldman v. State Farm Fire General Insurance Co., 660 So.2d 300 (Fla. 4th DCA 1995). Because we granted review based on the certified question, we do not address the certified conflict cases.

. Although two doctors diagnosed Curran with RSD and she independently attempted to make an appointment with Dr. Uricchio prior to State Farm’s request for a medical examination and subsequent suit, State Farm argued in its briefs that a medical examination is essential, especially in cases where an insured is claiming a significant loss due to complications from injuries, such as RSD, which are subjective in nature.

. The Supreme Court of Nebraska has given examples of conditions precedent as the obligation of the applicant to satisfy the requirements of insurability, be in good health for life and health insurance policies, pay the required premium, and answer all questions in the application to the best of the applicant’s knowledge and belief. D & S Realty, Inc. v. Market Ins. Co., 280 Neb. 567, 789 N.W.2d 1, 9-10 (2010).

. State Farm sent a reservation of rights letter to Curran stating that her failure to *1079 "assist and cooperate" with the insurer may result in a denial of coverage.

. Some tasks that form the duty to assist and cooperate are not necessarily capable of being performed prior to filing an action against the insurer. For instance, an insured’s duty to assist an insurer in making settlements and attending and getting witnesses to attend hearings and trials are unlikely to be capable of performance prior to trial.