EVANDER, J.
Depositors Insurance Company (“Depositors”) appeals a final summary judgment entered in favor of its insured, CC & C of Lake Mary, LLC, d/b/a The Beach Scene (“CC & C”). Depositors argues that CC & C was not entitled to recover for its losses resulting from a burglary because of its failure to comply with relevant insurance policy conditions. CC & C responds that its breach did not prejudice Depositors and, therefore, summary'judgment was properly entered. Because a factual issue remains as to whether Depositors was prejudiced by CC & C’s breach, we reverse.
CC & C owns a surf shop that was insured under a Premier Business Owner’s Policy issued by Depositors. The policy was to be effective for the time period from June 30, 2010, through June 30, 2011. The bottom of the “PROPERTY DECLARATIONS” page of the policy states as follows:
PROTECTIVE SAFEGUARDS
This premise has one or more PROTECTIVE SAFEGUARDS identified by symbols herein. Insurance at this premise will be suspended if you do not notify us immediately if any of these safeguards are impaired. See PB 04 30 for a description of each symbol. APPLICABLE SYMBOLS: P-7
The Protective Safeguards Endorsement identified as “PB 04 30” states:
NOTICE
YOU RISK THE LOSS OF PROPERTY INSURANCE COVERAGE AT PREMISES DESIGNATED IN THE DECLARATIONS IF YOU FAIL TO MAINTAIN ANY OF THE APPLICABLE PROTECTIVE SAFEGUARDS, LISTED BY SYMBOL IN THE DECLARATIONS.
Our requirement that you maintain the protective safeguard is in consideration of a significant premium reduction. If you do not wish to commit to the requirements expressed in this endorse *890 ment, at our option, your insurance may be continued. However, the credit for such protection would not be applied. Your acceptance of this policy in the payment of premium when due constitutes your understanding and acknowl-edgement that you risk the loss of insurance at the premises designated if you fail to maintain the protective safeguard and your acceptance and agreement with the terms of this endorsement.
This endorsement also states:
Protective Safeguards
A. As a condition of this Insurance, you are required to maintain the protective devices or services designated by symbol in the Declarations.
B. This Insurance will be automatically suspended at the premises shown in the Declarations if you fail to notify us when you:
1. Know of any suspension or impairment in the protective safeguards;
2. Fail to maintain the protective safeguards over which you have control in complete working order....
The Protective Safeguards Endorsement defined the symbol “P-7” as a:
Central Station Burglar Alarm which, in the event of an unauthorized or attempted entry at the described premises, will automatically transmit an alarm signal to a Central Station. A current monitoring contract with an approved Central Station must be maintained.
Thus, there is no dispute that CC & C was required to maintain a burglary alarm system monitored by a security company and that it was obligated to notify Depositors if it became aware of any suspension or impairment of the system.
The parties stipulated to numerous facts that served as the basis for their cross-motions for summary judgment. CC & C contracted with FirstWatch Security Solutions, LLC, to provide alarm monitoring services for its security alarm system. On October 24, 2010, FirstWatch wrote a letter to CC & C, notifying CC & C that it had an outstanding balance of $528.32 and that the monitoring contract would be canceled if CC & C’s account was not brought current. When CC & C failed to pay the due and owing monies, FirstWatch canceled the alarm monitoring contract by letter dated November 27, 2010. The letter further advised CC & C that First-Watch would “not dispatch the Police, Fire, or Medical authority in the event of an emergency.”
Approximately three weeks later, CC & C’s surf shop was burglarized. On that day, the alarm system had been set and appeared operational and functional. However, FirstWatch was not monitoring the alarm. The parties agree that based on the means by which the burglars gained access to CC & C’s surf shop, the burglary would not have been detected even if the alarm monitoring contract was active.
The alarm monitoring contract was reinstated on December 20, 2010, the day after the burglary. On July 1, 2011, Depositors remitted a check for a return premium for the period between November 29, 2010, and December 20, 2010, based on its contention that the policy was suspended for that time span.
At the hearing on the parties’ cross-motions for summary judgment, the court found that Depositors had not been prejudiced by the failure of CC & C to maintain its contract with FirstWatch. In reaching this conclusion, the trial court appeared to focus solely on the fact that the burglary would not have been detected even if the alarm monitoring contract was in effect:
[W]e have to consider the prejudice to the insurance company in this kind of case, and in this case, I don’t think that — that paragraph B in the General Conditions which talks about automatic suspension overrules that law, that con *891 dition precedent. And even presuming it, I think the facts of this case as you’ve stipulated or established that the — the failure to maintain the contract with a monitoring company was not a cause of loss because it would not have been alarmed anyway if the contract — monitoring contract had been kept in force.
The parties subsequently stipulated to CC & C’s damages without prejudice to Depositors’ right to seek review of the trial court’s liability determination. After entry of a final judgment[1] in favor of CC & C, this appeal followed.
Depositors’ primary argument is that based on the express language of the policy, it was not required to show prejudice. We disagree. In State Farm Mutual Automobile Insurance Co. v. Curran, 135 So.3d 1071, 1078 (Fla.2014), in a plurality opinion, the following definitions for “condition precedent” and “condition subsequent” were set forth:
A condition precedent is one that is to be performed before the contract becomes effective. Conditions subsequent are those that pertain not to the attachment of the risk and the inception of the policy but to the contract of insurance after the risk has attached and during the existence thereof. A condition subsequent presupposes an absolute obligation under the policy and provides that the policy will become void, or its operation defeated or suspended, or the insurer relieved wholly or partially from liability, upon the happening of some event or the doing or omission of some act.
The plurality went on to observe that a showing of prejudice is relevant when considering whether an insured’s breach of a condition subsequent notice provision relieves the insurer of liability. Id. at 1079.
Applying those definitions to the instant case, the policy provision requiring CC & C to notify Depositors of any suspension or impairment of its monitored alarm system would be a condition subsequent, thereby requiring a showing of prejudice in order to support a denial of coverage. See Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985) (“If the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice.”); Indep. Fire Ins. Co. v. NCNB Nat’l Bank of Fla., 517 So.2d 59, 64-65 (Fla. 1st DCA 1987) (holding that policy provision requiring insured to give notice of increase in hazard was condition subsequent; insurer required to show prejudice in order to defeat coverage).
However, we also conclude that in determining whether Depositors was prejudiced by CC & C’s breach, the trial court’s focus was misplaced. CC & C’s failure to give Depositors notice of the suspension or impairment of its .alarm monitoring contract precluded Depositors from timely assessing whether the breach was substantial and material. As a result, Depositors was denied the opportunity to decide whether it would cancel the policy, keep the policy in place but with an increase in the premium, or waive CC & C’s obligation to maintain the alarm monitoring contract. Thus, the issue to be determined is whether Depositors was prejudiced by the lack of the opportunity to evaluate the effect of CC & C’s breach, not whether the loss .would have occurred even if there had been no breach by the insured. We find support for this conclusion from Independent Fire and Oretsky v. Infinity *892 Insurance Co., 524 Fed.Appx. 517 (11th Cir.2013).
In Independent Fire, the insureds on a fire insurance policy were the property owners and the mortgagee, NCNB. The policy required the mortgagee to notify the insurer, Independent Fire, of “any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee,” and to “pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.” 517 So.2d at 61. The policy further provided that Independent Fire had the right to cancel the policy at any time as provided by its terms, but in such a case the policy would continue in force for the benefit of the mortgagee for ten days after notice to the mortgagee of such cancellation. Id.
Subsequently, NCNB learned that the mortgaged property had: (1) been conveyed to a new owner; (2) been flooded; and (3) was unoccupied. Almost two months after the mortgagee learned of these events, the house was destroyed by fire. Id. at 61. When NCNB demanded payment under the policy, Independent Fire denied coverage on the grounds that NCNB had failed to give notice of the change of ownership, the change of occupancy, and the increase of hazard. Id.
NCNB filed a motion for partial summary judgment on liability. Id. at 62. One of the grounds for its motion was NCNB’s contention that Independent Fire was required to show that it would, and could, have canceled the policy prior to the loss in order for. the policy to be forfeited. The trial court granted NCNB’s motion without comment. Id.
In reversing the trial court’s decision, the First District Court of Appeal initially observed that one of the purposes of the policy clauses at issue was to afford the insurer an opportunity to determine whether an additional premium was due and payable to continue coverage because the requested changes were not permitted under the original policy, or to cancel coverage outright because the changes in the use or occupancy exceeded an acceptable risk. Id. at 64. The court went on to determine that a fact issue existed as to whether Independent Fire was prejudiced by NCNB’s failure to give notice. To establish prejudice, the court stated that Independent Fire would have to show
that such change or increase was so substantial that the risk insured by Independent materially increased, that such change occurred after the effective date of the insurance, and that NCNB’s violation of the notice requirement was a legal cause of loss to Independent, that is, it caused the insurer’s failure to cancel the policy or demand an additional premium.
Id. at 64-65 (emphasis added). Thus, in determining whether prejudice existed, the court did not consider the issue of whether the fire would have occurred even if notice had been given, but whether the lack of notice caused the insurer’s failure to cancel the insurance or demand an additional premium prior to the loss.
In Oretsky, the insured procured a Classic Collector’s Auto Policy for his Maserati. The policy required, inter alia, that the car be kept in a locked garage when not in use and that failure to comply with this condition without prior consent or ac-knowledgement from the insurer would void all coverages given under the policy. 524 Fed.Appx. at 519. The car was subsequently stolen while parked in Oretsk/s driveway. Id.
The trial court entered summary judgment in favor of Infinity Insurance based on Oretsky’s breach of the “garage” condition. On appeal, Oretsky argued that there was a disputed issue of fact as to whether the insurer was prejudiced by the *893 failure to park the Maserati in the garage, because there was evidence that the theft would have occurred even if it had been parked in his garage. Id. at 524. In rejecting this argument, the Eleventh Circuit (applying Florida law) observed that prejudice had been shown:
Here, even if parking the Maserati in the garage ultimately would not have prevented the theft, Oretsky’s failure to do so certainly increased the danger of theft.
Id. at 525.
In the instant case, the record is largely devoid of facts reflecting whether Depositors was prejudiced by CC & C’s failure to provide notice of the suspension or impairment of its alarm monitoring contract.[2] Accordingly, we reverse and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
EDWARDS, J. and MALTZ, H.M., Associate Judge, concur.

. The final judgment was entered by Judge Nelson after Judge Cobb granted partial summary judgment in favor of CC & C.

. CC & C argues that by relying almost exclusively on the argument that "prejudice need not be shown,” Depositor’s waived the issue of whether it was prejudiced by the lack of notice regarding the suspension of the alarm monitoring contract between CC & C and FirstWatch. We reject this argument. It was CC & C’s burden on its motion for partial summary judgment to prove that based on the undisputed material issues of fact, it was entitled to summary judgment as a matter of law.